and this is 251118. Okay, we'll hear from the appellate whenever you'd like. Incidentally, and I think the appellate, you're going to, you're going to alternate. Okay, alternate at your own risk. Good morning, may it please the court. My name is Harry Daniels. I represent the appellate sitting at the table, Ms. Kendra James, who she is the administrator of the state for Father Kevin Dizmang. You know, as we appeal this case from the district court, because we believe this court error and failed to consider that the act by one of the appellees, Appellate Fischer, the paramedic act was egregious conduct. That it was so egregious that a case directly, need not to be directly on point, nor a case in the 10th Circuit nor the Supreme Court to determine if this was a constitutional violation. Your Honor, we're talking about a case dealing with a person who shows signs of oxygen deprived, breathing, that was in distress, breathing, apoxia, and the paramedic who we believe, based on the allegation of the complaint, is somebody who is trained to identify those medical issues. Instead, this paramedic engaged, tackled Mr. Dizmang, as alleged in the complaint, and wrapped his arm around his neck. We talked about a choke that resulted into the death of Mr. Dizmang. I believe that is undisputed at this time in the allegation of the complaint, particularly as we allege that five doctors opined that the cause of death was due to physical restraint. We are aware of the district court's position as it relates to whether this law clearly established. And I think that when you have an act so egregious as this, that I think this is directly where we talk about the Casey case in Capital Heights. We talked about a sliding scale where this court should not be waiting for a case directly on point or similar to determine if this was a constitutional violation. I think this case really tantamounts to the acts of Appalachian Fisher, kind of tantamounts to where a doctor goes into a hospital room and sees a patient struggling to breathe and takes the oxygen mask away from them. Now, obviously that didn't happen, but we're still talking about restraint that restricted Mr. Dizmang's oxygen and breathing that resulted in his death. I think one of the things that the district court determined that the appellants did not show in the allegation that the Appalachian Fisher was engaging in law enforcement functions. I believe based on the reading of the complaint, of course, we had a motion to dismiss stage where the allegation and complaint should be accepted as true. And like most favorite to the non-moving party of the appellants here, where you have in the complaint the acts, the allegation of what transpired with Appellant Reed, the officer who responded as well, where he was ordering Mr. Dizmang to put his hand behind his back. He initially told him to sit down and he told him to put his hand behind his back. Mr. Dizmang was resistant. Then he basically escalated and told him to put his hand behind his back. Mr. Dizmang fled. I don't want to say he fled, but he walked off, walked away from him, which now the Appellant Fisher taps him to the ground. And when you look at this complaint and even go after the fact and you look at the dialogue within the hospital setting and the question by one of the nurses asked Mr. Fisher, it says, you arrested that boy. And Fisher says, no, the cop did. He was chasing him, but we lost him between the little grove of trees. So I was like, and he shrugged. And that's what he's talking about. So even if you draw inference from that statement, which I don't think you have a drawn inference, I think the facts within the complaint really shows that he's talking about arresting, detaining Mr. Dizmang in this situation. What if, as a paramedic, it's his view that there's someone who's not acting rationally, they're near a road, there's safety risk either to Mr. Dizmang or other people around him, and he's using his medical judgment that the individual needs to be restrained. Well, that could happen. And in fact, it's a case within this district, and I believe I pronounced it right, Van Landenham versus the City of Oklahoma. It's a 2022 case in the Western District of Oklahoma. It's kind of instructive here where a paramedic... Is this in your brief? Did you cite that in your brief? Yes, it's within the brief, yes. Where the paramedics in fact was trying to restrain the person in order to do their job. And the district court in that case said, well, we don't find this a seizure under the Fourth Amendment, because they were trying to restrain. And they really turned on the issue of who initiated? Was it a seizure? Was it a restraint for medical purpose? And in that case, the paramedics initially were by themselves. They were alone. Law enforcement wasn't there at all. A law enforcement eventually came to the scene and the paramedic asked the officer, could he put handcuffs on him so we could continue to do our job? That's a different fact pattern here. In this case, the first person that engaged Mr. Dismayne was the officer. And in fact, and I know the district court said he relied on the complaint. And I know that the videos were also submitted in this case. But even if you look at the video, the Officer Reed, he tells them, I'm giving you an order. This is an order. This is a lawful order. When you're talking about a lawful order, you're talking about a seizure at that point. I think we pointed to the case. But that's Officer Reed. Right. I thought you were talking about Paramedic Fisher. Well, we believe Paramedic Fisher basically in this case assisted and aided Officer Reed in the seizure of Mr. Dismayne here. I think one of the things that need to be really fleshed out is whether we're talking about a seizure or we're talking about a restraint for the purpose of providing medical treatment here. And I think that's what the district court kind of decided. This is more of a medical restraint versus a situation of where a Fourth Amendment seizure would come in. And in opposition to that, when you look at this complaint and you look at the acts of Officer Reed and Appellate Fisher, where he engages with Officer Reed to seize him, to place him under arrest, detention, whatever you want to call it, then he now is shifting away from providing medical care. In fact, throughout the course of the complaint, and we allege he didn't even provide medical care at all. Isn't the whatever you want to call it the whole bit here? I mean, that's the entire question is whether the paramedic is acting with an intent to provide medical services to the individual or whether it's with an intent and purpose to arrest or to prevent unlawful conduct or to affect an arrest. There's no there's no allegation about that in the complaint, is there, about paramedic Fisher's intent? Well, I think paramedic Fisher's intent is relevant here because you look at from an executive reasonable standpoint what was taking place at that time. And we're really at this point just talking about a complaint. And the complaint alleges at this time that at that time that Officer Reed was engaging in seizing Mr. Dismayne. And if you want to really look at the intent element of this case and say what was his intent, I think if you look at the intent, he didn't provide any medical care. And he said that he was they were arresting trying to arrest Mr. Dismayne. Well, he didn't say he acknowledged that the arrest was taking place. So the other circuits that have taken this issue up are related issues of paramedics in similar situations draw out this complication because there's this overlap. If you've got someone that needs to be restrained so you can provide medical services, then the question is, well, is the restraint to provide medical services or for some law enforcement purpose? And you say that this is a case that's so extreme that you don't need to point to similar case law. But in fact, well, how do we deal with the issue that all these case law that appears to exist in the other circuits cuts the other way? What do we do with that? Because I think when you look at the fact patterns in this case, you got to look at the facts in each case, not just the over broad sweeping look at the facts and the facts. In this case, you have a person that's having struggling to breathe. You know, the issue is he can't. I mean, he's hunched over. He's oxygen deprived. He barely can speak because he can't breathe. Then you have a paramedic, a trained medical person who, in fact, engages and inflicts a act on this individual where he used a maneuver that restricts his airway that leads to his death. I think when you look at those other cases Is that a breach of the standard of care as a medical provider or is it a law enforcement act? Well, it's a breach. It's both. It's actually both. It's a breach of standard care. And when you engage in law enforcement acts, absolutely. Then it carries over to now you engage in a seizure. And I think that this court has already determined that it doesn't really matter the title of the person. In fact, in Jones versus Hunt, a 2005 case, this court explicitly recognized that the Fourth Amendment applies to social workers upon the same objective and reasonable standard used for police that demonstrates excessive force analysis is not limited to law enforcement personnel. That's a 2005 case. I don't think it's brief, but it's Jones versus Hunt. So when you look at that case, that case is not even dealing with law enforcement. It's dealing with a social worker. So I think when we get into this, what was the intent? What was the intent of the paramedic? Particularly, what was he doing? We had to look at an objective standard as to what took place as alleged in this complaint. And we believe this complaint meets the possible standard, Iqbal 202 standard, that shatters that he was engaging in law enforcement practices. Could I interrupt you with a couple of questions that go beyond? I think I understand your argument that you have made, objectively, you have given facts that would indicate at the dismissal stage that this was a seizure because the intent was to restrain, not to provide, do something else like provide medical services. But my concern is, first of all, the district court here didn't go beyond the seizure question. It found as a matter of law there was no seizure and there couldn't be. I guess my question to you is if we go beyond the seizure and say, yes, there are, at least at the motion to dismiss stage, objective factors that would support the seizure, we don't have a determination by the district court here of reasonableness. That's correct. The courts Do we need to send it back is my question. And I believe on those grounds alone it could be sent back because you have an A and a B. The courts need to get past the A to even determine. Can we get to reasonableness? Well, I believe that based on. Did the district court make enough fact findings that we could get to reasonableness ourselves? Well, I think based on the complaint itself and within the confines of the complaint. Well, yes, that's right. I don't mean fact findings. I mean, we don't need, you're right, it's at the dismissal stage. So we don't need to worry about sending it back. I've forgotten that. Okay, so then my next question is, if we get to that point, I don't see where even if we would agree that this was potentially a seizure, this was a seizure, and even if we were to find a constitutional violation or assume one, as the district court did here, despite finding no seizure, tell me about the clearly established prong. What authority are you looking to where this not only the officer, but here it would have been the paramedic would have had notice that his conduct under these particular facts was a constitutional violation? Well, I think that you can look to the case, with the case versus Weigel versus Broad case, where you're dealing with a person who is exhibiting those symptoms, particularly the one that Mr. DesMaine was exhibiting, where these courts have determined that even using on a person that's in a prone position and putting pressure on their upper torso could result in death. So I think it's... Well, I mean, this was not, there's cases out there, but they're usually several minutes of either the person's in that prone position or they're not moving. This all happened, from what I could tell, within a minute or less. That's correct, Your Honor. And the purpose of the restraint appeared to be to help the officer who then moved right in and handcuffed him. I mean, there wasn't a long period of time, as far as I could tell. I mean, I guess I'm concerned that this is similar enough to the cases that you cited that it would have been obvious that this was a constitutional violation. Well, I think, even if it's not a case directly on point, and very seldom, and obviously you could talk about the Supreme Court Brown versus Connor, where the courts would say it's almost never a published case directly on point. I get that. I understand that. I'm just saying, in this area, it needs to be pretty close. And we also have a paramedic here, and I don't quite know how that factors in. If it was a seizure, it was a seizure. But if it was unreasonable, it was unreasonable. I think when you look at the context of the case, particularly at this stage, and we're talking about the officer egregious, I think when you look at facts, facts specific, and I think you have to look at the facts when you're dealing with a use of force, particularly a Fourth Amendment violation. And as I stated before, you had Officer, I'm sorry, Reed and a paramedic coming on scene and seeing a person in a position that clearly was oxygen deprived, who was hunched over, who was dealing with needed oxygen. And then subsequently, that same paramedic uses a restraint to deprive him of oxygen. I think you get beyond, you don't, to me, it's like when you have a case, if you have a person that's in a helicopter, police helicopter, and you don't have a case before, and they push them out. I think the facts are so obviously egregious that you don't even need a case on point where this paramedic engaged particularly in this conduct and act. And I think I'm running out of time. I'm sorry, I've got another question, and maybe, yeah, I apologize. Can't let you sit down just yet. I have a question on your claim against the other individual, Defendant Officer Reed. And it seems to me that you have maybe waived or given up on your claim, which below, as I read it, was the violation of the duty to intervene, that he should have intervened when this was all going on. And that's how it was briefed, and that's how the district court decided. But then you're now here on appeal, and you're talking about a substantive due process violation, as far as I can see. There's no mention of any duty to intervene, and it seems to be a different claim that wasn't made below. Can you explain that? Well, I think that when you're talking about the obviously at the stage where you're talking about motion is missed, and the claims are particularly made in a complaint as to whether... I'm talking about the legal claim now, not the facts. It seems to have morphed at the appeal stage into a 14th Amendment claim instead of a 4th Amendment claim. Are you particularly talking about a special relationship? Yeah, that's what you're alleging in the appeal. I think within the context of that brief is that we're not waiving our intervener. We just gave another waive, particularly when you're talking about an officer who would have a special relationship to the extent that this court's determined there was no seizure by the paramedic. We didn't waive that he had a duty to intervene. Did you even argue the duty to intervene under the 4th Amendment in your appeal brief? I didn't see it. Well, I think in the context of he had a duty to stop on his special relationship argument, I believe that's where it's embedded that he had a duty to intervene, particularly to stop him from what we believe was committing a constitutional violation. So I think within the context of that argument, there's no waiver of the duty to intervene. I think more so the title talks about special relationship, but we still within the confinements that he had a duty to intervene to stop the appellee, Fisher, from what we believe is using a chokehold on Mr. Duesvain. So that's kind of where we stand in our argument, particularly within the context of that special relationship argument that he still had a duty to intervene. So we did not, I don't believe we waived it. Okay. Thank you. I think you saw the Jones v. Hunt, and I think you were acknowledging that that's a new site. Is that right? Yes, Your Honor. Jones v. Hunt. Do you mind sometime this week, we have a Rule 28J, and I should say you hadn't done anything wrong, but I was going to ask you to do me a favor. Would you file a letter, you might look at that Rule 28J, and you file it with the court clerk, and the only thing that I was going to ask you to put in there is the citation for Jones v. Hunt. You don't need to make, in fact, I'd ask you don't make any argument. You already made it today. But that way when we're looking for that case, we'll know where to find it. Thank you, Your Honor. Okay. And unfortunately, you have been fully heard, but I think you ran out of rebuttal. Thank you. We'll hear from the appellee. Good morning, Your Honors, and may it please the Court. My name is Jonathan Eddy. I'm here on behalf of Paramedic Defendant Nick Fisher. With me is Counsel for Officer Reed, Mr. Vaughn. He and I intend to split time equally today, so we'll have time to address issues that are specific to his client. So I'll do my best to make my arguments as efficiently as possible so Mr. Vaughn has enough time. At bottom, Your Honor, Your Honors, the estate has failed to overcome Nick Fisher's qualified immunity. It has not identified any clearly established law. Specifically, Mr. Daniels has not put forward a single case finding that a paramedic violates the Constitution when he's in the process of effectuating in the process of restraining an individual for purposes of a medical transport. While this wasn't addressed today at oral argument, plaintiff relies on the Torres versus Madrid case in his briefing. Torres versus Madrid is not on point, Your Honor. It does not advance their argument. Torres versus Madrid was expressly limited to apprehensions and dealt with the application of force. In that case, the shooting of a suspect while officers were in the process of effectuating a felony arrest warrant. Torres versus Madrid also relied heavily on the Hodari D decision, which itself dealt exclusively with arrest, and specifically in that case, officers attempting to effectuate an arrest of a fleeing suspect. Well, what if he did, to take that example, what if he did not to effect an arrest, but, you know, we've got to get this guy in a transport, he may walk in front of traffic again, and Fisher shoots him in the leg, wants to make sure he's clear he's not hitting an artery, he's an expert marksman, shoots him in the leg to disable him so that Reid can handcuff him behind his back, get him in a transport. Is that a clearly established violation, even though he's acting in a paramedical capacity? So are you asking if paramedic Reid shot? No, I'm not. I'm asking if Fisher, you're representing, or excuse me, paramedic Fisher shot, you mentioned, I'm sorry, I think we're getting the, yeah, I'm saying if, your whole point is that Fisher's just trying to help Reid, correct, get this guy. Right. And so what if Fisher says, okay, well, I've got to do something to help my buddy. I'm going to shoot him in the leg, make sure I don't hit an artery, and then Reid is able to, okay, well, he's on the ground, he's, you know, bleeding from this gunshot that your client inflicted. Is that, can we construe the allegations of the way to say that that is a clearly established violation of the Fourth Amendment, even if Fisher is acting in a purely paramedical capacity, not to effectual unrest, but to facilitate Officer Reid's ability to transport the gentleman to get help? So that question goes to the function-dependent test, which has essentially been adopted by at least five other circuit courts of appeals, or at least adopted by some and acknowledged by others, stemming from the Sixth Circuit opinion in Pete. And so in that situation, essentially what you'd have to be looking at with respect to paramedic Fisher's qualified immunity is what function was he undertaking at that moment? What was he attempting to do? And there are no allegations in the complaint to suggest that paramedic Fisher had pointed a weapon or even carried a weapon because he was a paramedic. I think that's why I called it, I mean, I'm not trying to make fun or anything. I mean, I know that. And so I'm just trying to ask, don't say hypothetical, we'll say it's a hypothetical question. Would you say that is a clearly established violation? Ours isn't that case, and so it's different? Or would you say that that would be a clearly established violation? Well, in that situation, I think what you're looking more at is the force used by the officer to subdue the individual. That, I think, is a separate question. That goes to objective reasonableness. The separate question is, was a seizure effectuated? And to find the answer to that question, what you need to look at is the function-dependent test. What was the function that the paramedic or the officer were attempting to achieve? Let's say the function is exactly the function that you are attributing to Fisher in this case. The function was not to effectuate a seizure or an arrest. It was to facilitate your co-defendant's ability to handcuff the gentleman behind his back to transport him to get help in a purely paramedical capacity. That was his function. Was that a clearly established violation of the Fourth Amendment? It would not be, Your Honor, based on the totality of the decisions from the Fifth, Sixth, Seventh, Eighth, and Ninth Circuit Courts of Appeals that have looked specifically at these similar circumstances when paramedics are involved, sometimes in cooperation with officers and sometimes not. Mr. Fisher says, you know, he's going to kill somebody. I'm an expert marksman. Mr. Fisher says, I'm going to shoot him in the heart. I'm going to try to kill him. He kills him. He's not trying to effectuate an arrest. What he's really trying is to remove the guy out of harm's way so that he doesn't hit a pedestrian or hit a car. Now, has he got a reasonable fact finder view that as a violation of a clearly established right under the Fourth Amendment? It seems like you're staking out an extraordinary, extraordinary position. And I'm just trying to make sure if you're saying that it doesn't matter what Fisher does, if he's trying to tackle him, if he's trying to inflict blood, if he's trying to kill him, it doesn't matter. As long as he's saying, I'm a paramedic. I can do whatever the heck I want. I can kill a guy because I'm doing it as a paramedic. I'm not doing it as a law enforcement officer. And that can never be a clearly established violation because we have never hit a precedent with such a remarkable position. Nobody's ever argued that. And so we're never going to have a precedent saying such an extraordinary, reflecting such an extraordinary position. How in the world can we say that it's not a clearly established violation to shoot a guy in order to put handcuffs behind his back when he's standing in the tree line? He's not even near this very seldom-traveled road. I mean, how? So, Judge, I apologize. I may have misunderstood your hypothetical. I thought that you meant that Officer Reed, the law enforcement officer, shot the individual to subdue and then paramedic Fisher. Let's just find out. Okay. All right. So I will concede your honor. We'll interrogate him when he's up here. I'm interrogating you. Okay. All right. So I'm talking about your client. I'm saying all Reed is doing, I don't think anybody questions, he's trying to handcuff the guy behind his back. Correct. It's your client that goes and decides to do a tackle that would probably trigger a 15-yard personal foul if he was a football game. But I'm talking about your client. I'm not talking about Reed. Reed's just trying to handcuff the guy. Okay. It's your client that I'm saying tries to shoot the guy in the leg to avoid an artery. And now you're saying that's not a clearly established violation, probably not even a violation. So I'm not saying, okay, well, let's take it one step further. Let's just say Mr. Fisher kills the guy because, God forbid, he could walk into traffic and hurt a pedestrian or another driver. Would that constitute a clearly established violation? I concede, Your Honor, that if paramedic Fisher, as a paramedic, used a firearm to shoot someone who was fleeing for the purpose of providing medical treatment, that potentially that would be a clearly egregious example that could overcome qualified immunity. I concede that. And so now, how do we draw, how do we write an opinion saying, okay, well, if you shoot a guy to avoid an artery, that's one thing. But if you tackle someone above the waist causing the guy to fall back and then stay on him, when he is, according to the allegations that we have to credit, saying, I can't breathe, how then do we draw a line between that above the waist tackle, staying on the guy so that Reid can then handcuff the gentleman? How do we draw a line saying, that's not a clearly established violation, but if he shot a guy in the artery, that would be a clearly established violation? We don't have cases on either point, but I think you're acknowledging that nobody would think that that was constitutional to shoot a guy. Well, why isn't it the same effect if you say you're tackling a guy above the waist and then staying on him after he's saying that I can't breathe? Well, in this case, Your Honor, you don't need to engage in that extreme line drawing for purposes of Paramedic Fisher's qualified immunity. You need only look at the other circuit court opinions that have dealt with this specific issue, two of which have specifically dealt with positional asphyxia effectuated by either a paramedic, an officer, or a combination of both. The Peete decision dealt with those same exact facts. The most recent decision from the Ninth Circuit from 2024, the Perez decision, which is in the briefing, dealt also with positional asphyxia through a combination of restraint that was employed by the paramedic and the officers who were on scene. And the Ninth Circuit said, look, no clearly established violation here by these individuals because there's no clearly established seizure because it's clear that the officers and paramedic were there to transport this guy for medical purposes, not to place him under arrest. Of course, that's not clear here, at least not from this stage of the litigation. We've got some pretty objective looking facts asserted here, including the officer's own statements about what he was doing and why he was trying to restrain. And that's what makes it a seizure. He doesn't have to be a law enforcement officer. His intent must be to restrain, not an intent to even restrain to provide medical care. Simply an intent to restrain is a seizure. And there is case law supporting that. And we do have objective facts here suggesting he literally was all about helping the officer who's chasing after this guy. And he says he tackled him. He says he didn't know what he was supposed to do. He'd never done anything like this before. This is the first time he'd taken anybody down. He lost him between a grove of trees. You know, there's more. But I mean, we've got this guy's own statements. I don't know why at this stage, I understand that you could develop in discovery something more that he was taking him down to provide him with medical care, although it doesn't appear there's any reason to provide him with medical care right now. And he even talked about, oh, I need to provide him with care and then watched him not breathe and didn't provide him with care for ten minutes. So you've got enough facts to get past a motion to dismiss on the seizure. I guess I don't understand how TORUS supports you. There wasn't an arrest in that case, and they did talk about an arrest, but the court there extended, you know, applied and extended the common law rule, which doesn't require an arrest for seizure. You don't have to have an arrest. You don't even have to have necessarily an intent to arrest. It's about restraining their liberty and whether the intent of the individual, not just whether they're a law enforcement officer or not, is to restrain. And that's probably a fact question here, isn't it? Well, respectfully, Your Honor, TORUS v. Madrid was expressly limited to apprehensions. The opinion made that expressly clear. But they talked all about the common law, and they adopted and extended, approved and extended the common law, which does not require generally an arrest. No question in that case, they talked about it. There was no formal arrest in that case. But the point being, it's not required. And just accepting that, I'm not sure how we can at this point judge what this individual's intent was, particularly where we have more than we normally would have, which is even some statements from him about what happened. Quickly, Your Honor, with respect to the statements, what's key with respect to an arrest is you always look at it from an objective standard. So whether Paramedic Reed believed that, Paramedic Fisher, rather, believed that Officer Reed was attempting to effectuate an arrest is irrelevant. But what about the circumstances? That's a good point. That's a good point. What about the circumstances here where he's chasing after this guy and jumping on him and hanging on to him in order for the officer to handcuff him? Correct. So that he could be medically transported. And the allegations in the complaint actually clarify and specify what the purpose of the crisis response team was. It was there to provide emergency treatment and counseling. Well, they didn't know until they got there what treatment was needed. Correct. But there was a reason why a crisis response team was called to the situation and not just a SWAT team. So the fact that that's the reason that they go there, you're saying it doesn't make any difference than what actually happens or what their intent might be at that moment. We can assume that because it was this crisis response team that they were eventually going to transport this person for treatment. No, we don't have to assume anything. The allegations of the complaint do not indicate that they were there to arrest Mr. Dismay. That can certainly, I mean, if someone does something during the course of this, whatever you want to call it, it's not an investigation, but during the course of this encounter, certainly it could change to an arrest situation. And this person was, yeah, he was running around in traffic and they were trying to grab him and they were running around and back and forth and he went back out. And to me, it's probably more at this point more about safety, restraining him for his own safety as well as perhaps people out there driving their cars on the street. And maybe that's what it was, but it's not necessarily at that point to administer medical care. Well, it was a combination of issues. Safety for the public, certainly Mr. Dismay's well-being, which was the whole reason they were there trying to restrain him so that he could be transported to the hospital for treatment. Well, I'm saying at that very moment that the restraint occurs and under the setting that it occurred, not necessarily what they might have intended to find or what they thought they were going to find or what they thought they were going to do, but what happened in that setting, there may be a question of fact as to what the intent was. Right. But at the end of the day, it ultimately comes down to was there a clearly established seizure? And if there was, was there a clearly established violation here by either Paramedic Fisher or Officer Reed? And our position as outlined in the brief is that there definitely was not. Thank you. Any other questions? Okay. Thank you. All your time is exhausted, but we're going to give you one minute. Thank you, Your Honor. I can't say I wasn't warned, Your Honor. Your Honor, I'm going to be very brief. I'm going to go directly to Judge Moritz. I was hoping you would. If you look at the actual opening brief, the intervene is mentioned twice, two times. One in the jurisdictional statement, and second, just in talking about what some of the claims were. Otherwise, there is absolutely no direction to that argument. We did make the argument that it was waived as well, I believe on page 26 of the brief. And there's a footnote with some cases cited. So we do believe that it has been waived. Even if you don't, then I think the... It has changed, though. It has morphed into a 14th Amendment claim. Which was not included in the complaint. Not pleaded in the complaint. And we also cite cases that you can't bring it up now. And there's some 10th Circuit authority on that. I would use the last six seconds that I have to emphasize the second prong of qualified immunity. Judge Sweeney emphasized the second prong, which requires that there be an observation of the officer of another officer's use of excessive force. Which is not a paramedic. And there is a long line of cases which emphasizes that specific second provision in the elements. And we would have to substantively change the elements of the failure to intervene to be able to fit this case, this round case, into a square peg that plaintiff is trying to force it in. I would otherwise stand on my briefs for the remainder of my argument. Okay. Thank you very much. This matter will be submitted. Thank you both, all three counsels, as previously. I thought the briefing and the advocacy was excellent. We really appreciate it.